## URV GROFF v. STATE.

No. A-6049. Opinion Filed Sept. 8, 1928.
(269 Pac. 1061.).

C. H. Madden and Stewart & Williams, for plaintiff in error.

George F. Short, Atty. Gen., and Leverett Edwards, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Harmon county, on a charge of grand larceny, and his punishment fixed at confinement in the state penitentiary for a term of three years. Motion for new trial was filed, overruled, exceptions duly saved, and the case appealed to this court for review.

The state called Raymond Keith, who in substance testified as follows: That in the fall of 1924 he lived on a farm six miles north of Hollis, Okla., and was raising cotton; that he ginned some cotton at the Long Gin Company of Hollis; that he began ginning about the 23d of October, 1924, and the first bale ginned by him was by the gin company numbered 1,621, which bale he left in the gin yard in the possession of the Long Gin Company; that the gin company furnished him the number of the bale, and he left the bale in the gin yard, the gin ticket was No. 1,621, weight 490 pounds; that the cotton yard number on the bale, as he remembered it, was 13,572. On cross-examination he stated

the next time he saw his bale of cotton was on the 24th day of December; it had no cotton or paper tag on it; the law had an investigation mark on it. The only identification he had to it being his bale of cotton was by the number the gin company had given him and records of the cotton yard.

C. D. Henderson, called as a witness for the state, testified he was bookkeeper for the gin company, and as part of his duties he kept the record of the cotton received for ginning and the number of the gin weights. he identified the exhibit that had been introduced that showed bale No. 1,621, October 31, ginned by Mr. Keith, weight 490 pounds; that Mr. Keith came to him afterwards and stated that he could not find one of his bales of cotton, and asked him to check his records and see what bale was short, and he did so, and reported to Mr. Keith it was 1,621; there was a bale of cotton of that weight that had been tampered with, and identification marks destroyed; he stated they put a paper ticket and a metal tag on the bale of cotton that had been tampered with. The purpose of the double marking was for identification; in case the paper tag was torn off, they would still have an identification mark; that some time in December Mr. Keith presented the duplicate paper tag, the bale had been tampered with, and the tag torn off or lost off; "I don't know whether 1,621 was torn off or not." The record showed Mr. Keith ginned No. 1,621; no one else ever claimed the bale; the paper tag was first removed, and then the metal tag. "I put another metal tag on it, and it, too, was taken off. I then slipped a pasteboard in the tie. It disappeared in two or three days. I then took a slip of paper and dated it and signed it, and Mr. Long signed it and slipped it in the bagging."

Witness was handed State Exhibit D, and asked to

state what it was, and stated it was a slip of paper dated 11-29-1924, signed by C. D. Henderson and W. Long. This bale of cotton disappeared from the yard with this slip of paper under the bagging. It was finally recovered from the county cotton yard. The paper was concealed and could not be seen from the outside. This bale of cotton was the same bale of cotton that was taken off our yard. The county cotton yard numbered it 13,572. "I never sold the bale, nor did I buy it. The original number of this bale was 16-something; I don't remember the other two figures. This bale, No. 13,572, has the same weight of 1,621, This bale was ginned October 23, 1924, or October 24, 1924, I don't remember, and was removed from the yard on the 9th of December."

On cross-examination he stated that he did not remember the number of bales of cotton that Mr. Groff, or the Groff family, had on the yard at that time.

Mr. Long testified in substance as did Mr. Henderson with reference to putting the number and date under the bagging, so it could not be seen, which was identified later in the county cotton yard as being the bale of cotton sold or delivered there by the defendant Urv Groff, and sold in the name of Frank Goad.

Frank Goad testified in substance that defendant did not sell any cotton for him, and had no authority to sell any, nor had any authority to sell any other cotton in his name, and that he did not receive any of the proceeds from the bale the defendant sold in his name.

There were a number of other witnesses called in behalf of the state, who testified to facts tending to corroborate Mr. Keith and Mr. Long.

The defendant, called as a witness in his own be-

half, testified that, on the date the bale of cotton was sold, he sold five bales of cotton to Mr. Bellah; that he sold four of them in the name of A. K. Whiteside, and the other in the name of Mr. Frank Goad, giving as his reason that the Cotton Growers' Association had the cotton tied up, and he sold in the name of Whiteside and Goad in order to get the money to pay up what he owed; that he had a one-third interest in the five bales of cotton, that he had claimed this bale of cotton, and seen it in the yard for several weeks, and that he was not attempting to conceal his actions; that he moved the bale of cotton from the yard on the 9th day of December, 1924, at the same time he moved four other bales; that he had frequently sold cotton from off his father's place, and the Whiteside place. Defendant denied that he had information that he heard or saw Mr. Bell attempting to locate this bale of cotton for Raymond Keith; denied he told Mr. Bell, on December 4th, that he knew whose bale of cotton it was.

B. P. Groff, the father of defendant, testified that he had about 11 bales of cotton on the yard at the time it was alleged the defendant took this bale, and that both of his boys were authorized to sell cotton.

There were a number of other witnesses, who testified to certain facts connected with this bale of cotton; but this is in substance all the testimony we deem necessary to set out.

Defendant has assigned seven errors, alleged to have been committed in the trial of the case, but in his brief he has argued only the third and fourth assignments, which are as follows:

"(3) Said court erred in overruling the demurrer of plaintiff in error to the evidence of the state.

"(4) Said court erred in refusing the peremptory instruction requested by the plaintiff in error, defendant below."

These two errors will be considered together, as they both relate to the sufficiency of the evidence to sustain the conviction. Defendant urges that, in order to sustain this conviction, there are five main and essential propositions necessary to be established by the state beyond a reasonable doubt, before the court would be authorized to submit the case to the jury, and before a judgment of conviction could lawfully be rendered against the defendant.

The first proposition urged by the defendant is that the testimony is insufficient to show that defendant unlawfully and feloniously took the cotton without the knowledge or consent, and against the will, of Raymond Keith, the owner of the cotton. The testimony of Raymond Keith is that the cotton was taken from the gin yard without his knowledge or consent, or that of the gin company. The second proposition necessary to establish is that Raymond Keith was the owner of the identical cotton described. The evidence tends to establish the ownership of the cotton alleged to have been taken in Raymond Keith. The third proposition is that the cotton, if any was taken by the defendant, was a bale of cotton No. 1,621. The fourth proposition was that the cotton was of the value of more than $20; and the fifth proposition, that the cotton, if taken by the defendant, was taken by the defendant with the unlawful intent to deprive the owner thereof.

The evidence tends to show that the bale of cotton found in the county yard was the bale of cotton that had formerly been No. 1,621, from which bale of cotton the tags had been removed on two or more

occasions, and finally the officers and gin people wrote the date of the month and year, and had Mr. Henderson and Mr. Long sign their names on the paper. It was then put in the bagging of the bale of cotton, so it could not be detected. Concealed in the bale of cotton that was sold to Mr. Bellah by the defendant was found the paper that was dated and signed by Henderson and Long.

The proof clearly shows that the cotton was worth more than $20. The defendant was not the individual owner of any cotton in the yard. He offered some proof to show he had a one-third interest in some cotton with his father and brother. The testimony is sufficient to show that the cotton was taken with the intent on the part of the defendant to deprive the owner thereof. The record further discloses that if the defendant was short a bale of cotton, as he attempted to show, he had failed to make the fact known to the owners of the gin or attempt in any way to locate the same. The defendant was in and around the gin yard often during the time this bale of cotton was in the yard. The proof further shows that some one kept removing the tags from this bale, and finally it was determined by the officers and gin owners to place a mark where It could not be seen. When the bale disappeared from the yard, it was located in the county yard, where it had been sold and delivered to Mr. Bellah by the defendant.

The testimony in this case is sufficient to warrant the court in submitting the case to the jury, and the court did not err in denying the request of the defendant for a peremptory instruction. The evidence of the state, if believed, and the inferences logically drawn from it, amply prove the guilt of the defendant; the weight of the evidence and credibility of the witnesses

is a matter within the province of the jury. The jury is in a better position to determine the truth or falsity of the testimony given, and where there is reasonable evidence to sustain the verdict this court will not disturb such verdict, notwithstanding there is some conflict in the evidence. Worley v. State, 31 Okla. Cr. 253, 238 P. 225; Valdez v. State, 18 Okla. Cr. 204, 194 P. 451; Cole v. State, 18 Okla. Cr. 430, 195 P. 901.

Finding no reversible error in the record, the judgment is affirmed.

DOYLE, P. J., and EDWARDS, J., concur.